**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No.: 26-61234-CIV-DAMIAN

RAY ROMERO BOSCAN,

     Petitioner,

v.

TODD BLANCHE, *et al.*,

     Respondents.

_____/

**RESPONSE TO ORDER TO SHOW CAUSE AND PETITION FOR A
WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

Respondents[1], through the undersigned Special Assistant United States Attorney,

respectfully submits this Response to this Court's Order to Show Cause [ECF No. 4]. Petitioner

Ray Romero Boscan filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [ECF No.

1] (Petitioner and Petition) on April 27, 2026. For the reasons set forth below, this Court should

dismiss Petition as premature and for lack of jurisdiction. In the alternative, this Court should deny

Petition on the merits.

**FACTUAL BACKGROUND**

Petitioner is a native and citizen of Venezuela. *See* Petition, at 1. On January 5, 2024, an

Immigration Judge ordered Petitioner removed to Venezuela but granted him Withholding of

---

[1] A writ of habeas corpus must "be directed to the person having custody of the person detained." 28 USC § 2243. In cases involving present physical confinement, the Supreme Court reaffirmed in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), that "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004). Petitioner is currently detained at Broward Transitional Center. *See* Petition, at ¶ 1. The only appropriate respondent is Juan Gonzalez, in his official capacity as the assistant field office director of the Broward Transitional Center. All other respondents should be dismissed.

Removal to Venezuela under the Convention Against Torture. *See id.* On February 2, 2024, Petitioner was released from Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) custody under an Order of Supervision (OSUP). *See* Exhibit A, Order of Supervision; Exhibit B, Detention History.

On February 27, 2026, Petitioner was taken into ICE ERO custody after reporting for his scheduled OSUP appointment. *See* Petition, at 1. On the same day, Petitioner was served with a Notice of Revocation of Release pursuant to 8 C.F.R. §241.4(1), informing him that his release was being revoked to enforce his removal to Venezuela or a third country that would accept him. *See* Exhibit C, Notice of Revocation of Release, dated February 27, 2026. Petitioner was afforded an informal interview and given an opportunity to respond to the reasons for revocation of his OSUP as stated in the notification letter. *See* Exhibit H, Declaration. Petitioner provided no written statement, oral response, or documents. *See* Exhibit H, Declaration.

On or about March 4, 2026, Petitioner refused to sign the Notice of Removal to Mexico and told ICE ERO that he wants to go back to Venezuela. *See* Exhibit I, Notice of Removal; Exhibit G, Declaration.

On March 12, 2026, Petitioner had a bond hearing, and the Immigration Judge denied bond, stating that Petitioner is under an order of removal, the court lacks jurisdiction, and finds that Petitioner is a flight risk. *See* Exhibit D, Immigration Judge Order, dated March 12, 2026.

On May 4, 2026, Petitioner was issued a Notice of Removal to Mexico. See Exhibit E, Notice of Removal, dated May 4, 2026. On May 4, 2026, Petitioner was issued another Notice of Revocation of Release, clarifying that his case is under review for removal to an alternate country. See Exhibit F, Notice of Revocation of Release, dated May 4, 2026.

2

Petitioner remains detained at Broward Transitional Center (BTC). ICE ERO intends to continue its efforts to remove Petitioner from the United States pursuant to the final order of removal. See Exhibit H, Declaration.

**ARGUMENT**

**A. Petition Should be Dismissed as Premature because Petitioner has not Accrued Post-Removal Order Detention in Excess of Six Months.**

Section 241 of the Immigration and Nationality Act (8 U.S.C. § 1231) states, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231 (a)(1)(A). That period is called the "removal period," and the Secretary of DHS[2] must detain the alien during the "removal period". 8 U.S.C. § 1231(a)(2)(A).

**1. ICE Lawfully Detained Petitioner Pursuant to 8 U.S.C. § 1231.**

Under 8 U.S.C. § 1231(a)(6), an alien like Petitioner, who was ordered removed and who is inadmissible under 8 U.S.C. § 1182, may be detained beyond the removal period for a period reasonably necessary to remove the alien.  That said, the Supreme Court ruled that the statute "does not permit indefinite detention." *Zadvydas v. Davis*, 533 US 678, 682 (2001). To help guide lower court determinations, and to limit the occasions when courts will need to make them, the Supreme Court in *Zadvydas* held that six months of post-removal-order detention is presumptively reasonable. *Id*. at 700–01. In cases where detention lasts longer than the presumptively reasonable period of six months, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 701.

---

[2] After the creation of the Department of Homeland Security, the enforcement of immigration laws was transferred from the Attorney General to the Department of Homeland Security.  *See* 8 U.S.C. § 1103(a)(1); Subsec. (a)(1). Pub. L. 107–296, §1102(2)(B), as added by Pub. L. 108–7, §105(a)(1), substituted "The Secretary of Homeland Security" for "The Attorney General".

Thus, to establish a valid claim for unlawful indefinite detention under *Zadvydas*, a detained alien must show (1) "postremoval order detention in excess of six months" and (2) "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Petitioner, here, has not made such a showing and Petition should be dismissed as premature.

**2.   Petitioner Has Not Yet Been Detained for Six Months.**

Petitioner has been in ICE ERO custody since February 27, 2026. *See* Exhibit B. On April 27, 2026, Petitioner filed Petition. As of this writing, Petitioner has been detained in ICE ERO's custody fewer than 70 days, far shorter than the 180-day period that the Supreme Court held presumptively reasonable in *Zadvydas*. For this reason, Petitioner's challenge to his detention is premature. *See Farah v. U.S. Att'y Gen.,* 12 F.4th 1312, 1332-33 (11th Cir. 2021) ("If after six months he is still in custody and has not been removed from the United States, then he can challenge his detention under section 1231(a). But until then, his detention is presumptively reasonable under *Zadvydas*."), *overruled on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411, 419-23 & n.2 (2023); *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (holding that the "six-month period ... must have expired at the time [the petitioner's] § 2241 petition was filed in order to state a claim under *Zadvydas*"); *Gozo v. Napolitano*, 309 F. App'x 344, 346 (11th Cir. 2009) ("[B]ecause only 53 days elapsed between the final removal order and the filing of the petition, Gozo's *Zadvydas* claim is premature."); *Gonzalez v. Barr*, Case No. 20-10130-CV-KING, 2020 WL 7294570 (S.D. Fla. Dec. 10, 2020) (King, J.) ("[T]he 180 days in post-order custody must have expired before an individual can challenge custody under 8 U.S.C. § 1231"); *Salpagarova v. Immigration and Naturalization Service*, Case No. 20-61739-CVSINGHAL, 2020 WL 13550204 (S.D. Fla. Oct. 20, 2020) (Singhal, J.) ("Petitioner is not entitled to relief because

4

she has not been detained for more than six months after being subject to a final order of removal"); *Espinoza-Sorto v. Agudelo*, 2025 WL 3012786, \*7 (S.D. Fla. Oct. 28, 2025) (holding that a noncitizen's habeas challenge to his detention under 8 U.S.C. § 1231 "is premature" where "Petitioner has only been detained for four months"); *Barrios v. Ripa*, 2025 WL 2280485, \*8 (S.D. Fla. Aug. 8, 2025) (holding that that a noncitizen's habeas challenge to his detention under 8 U.S.C. § 1231 "is premature" where the noncitizen filed his petition significantly before the 6-month period set by the Supreme Court in *Zadvydas)*; *Marquez San Miguel v. Rippa*, No. 26-CV-22215-LEIBOWITZ, (S.D. Fla. April 14, 2026) (denying Petitioner's habeas petition as premature because Petitioner's "nearly three-months' detention falls far short of the time required to receive the benefit of the *Zadvydas* presumption of unreasonableness."). [3]

**3. Petitioner Cannot Establish That Removal Is Not Likely to Occur.**

Additionally, this Court can deny Petitioner's Constitutional challenge because Petitioner cannot meet his burden of proving that his removal is not reasonably foreseeable. *Callender v. Shanahan*, 281 F. Supp. 3d 428, 434 (S.D.N.Y. 2017) (describing how *Zadvydas* "places an initial burden on the detainee" to establish that the "no significant likelihood" standard has been met). The Petitioner failed to include nonspeculative assertions that his removal is not reasonably foreseeable, meaning Petitioner has not met his burden. *Callender*, 281 F. Supp. 3d at 434–35 (holding that petitioner must present more than "mere assertions that removal is unforeseeable").

---

[3] Courts outside this District have reached similar conclusions. *Louis v. U.S. Atty. Gen'l*, Case No. 2:20-cv-135-FtM-38NPM, 2020 WL 1049169 (M.D. Fla. Mar. 4, 2020) ("[W]hen he filed the Petition, Petitioner had been in custody only 92 days, much less than the 180-day presumptive reasonable period. The Court dismisses the Petition without prejudice as premature"); *See, e.g.*, *Rodriguez-Guardado v. Smith,* 271 F. Supp. 3d 331, 335 (D. Mass. 2017) ("As petitioner has been detained for approximately two months as of this date, the length of his detention does not offend due process."); *Julce v. Smith*, No. CV 18-10163-FDS, 2018 WL 1083734, at \*5 (D. Mass. Feb. 27, 2018) (deeming habeas petition "premature at best" as it was filed after three months of post-final order detention).

Respondent has shown that removal is likely to occur by serving Petitioner with Notices of Removal on March 4, 2026, and May 4, 2026. *See* Exhibit I; Exhibit E. Moreover, on February 27, 2026, and May 4, 2026, Petitioner was served with a Notices of Revocation of Release which state that his case is under review for removal to alternate country and that ICE is seeking a travel document to execute his expeditious removal to Mexico or a third country that would accept him. *See id.*

### B. Petition Should be Dismissed because this Court does not have Jurisdiction over Petitioner's claims.

#### 1. 8 U.S.C. § 1252(g) bars review of Petitioner's claims.

Petitioner is, in essence, asking this Court to prevent ICE from executing Petitioner's removal order by ordering the immediate release of Petitioner. *See* Petition, at 6. This Court, however, lacks jurisdiction to grant such relief. Section 1252(g) of Title 8, United States Code, categorically bars jurisdiction over "*any* cause or claim by or on behalf of any alien *arising from* the decision or action by the [Secretary of Homeland Security] to commence proceedings, adjudicate cases, or *execute removal orders* against any alien." 8 U.S.C. § 1252(g) (emphasis added). The Secretary of DHS's decision to *execute a removal order* squarely falls within this jurisdictional bar.

As the Eleventh Circuit explained, "Section 1252(g) bars review over 'any' challenge to the execution of a removal order – and makes no exception for those claiming to challenge the government's 'authority' to execute their removal orders." *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1273 (11th Cir. 2021) (holding that where there is challenge to the validity of a removal order, district courts lack jurisdiction to hear any "cause or claim brought by an alien arising from the government's decision to execute a removal order").

Here, as the petitioners in *Camarana*, Petitioner does not challenge the validity or existence of the order of removal. Therefore, Section 1252(g), as interpreted by the Eleventh Circuit in *Camarana*, deprives this Court of jurisdiction to grant such relief. *See Pedrozo Echevarria v. Krome*, Case No. 1:26-CV-20204-SMITH (S.D. Fla. Feb. 13, 2026); *see also Rivera-Amador v. Rhoden*, Case No. 3:25-CV-1460-WWB-SJH, 2025 WL 3687452, at *3 (M.D. Fla. Dec. 19, 2025) (holding that Section 1252(g) "divests the Court of jurisdiction" from enjoining respondents from detaining and deporting petitioner subject to a removal order); *Mapoy v. Carroll*, 185 F.3d 224, 230 (4th Cir. 1999) (holding that district court lacked jurisdiction to hear a challenge to execution of order of deportation pursuant to § 1252(g)); *Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *3 (S.D. Fla. Aug. 8, 2025) ("The Court finds that § 1252(g) deprives it of subject-matter jurisdiction over Respondent's decision to revoke the OSUP…").

### 2.   8 U.S.C. § 1252(b)(9) bars review of Petitioner's claims.

Under § 1252(b)(9), "judicial review of all questions of law . . . including interpretation and application of statutory provisions . . . arising from any action taken . . . to remove an alien from the United States" is only proper before the appropriate court of appeals in the form of a petition for review of a final removal order. *See* 8 U.S.C. § 1252(b)(9); *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999) ("*AADC*"). Section 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of all [claims arising from deportation proceedings]" to a court of appeals in the first instance. *Id.*; *see Lopez v. Barr*, No. CV 20-1330 (JRT/BRT), 2021 WL 195523, at *2 (D. Minn. Jan. 20, 2021) (citing *Nasrallah v. Barr*, 590 U.S. 573, 579–80 (2020)). Moreover, § 1252(a)(5) provides that a petition for review is the exclusive means for judicial review of immigration proceedings. Notwithstanding any other provision of law (statutory or nonstatutory), . . . a petition for review filed with an appropriate

7

court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) [concerning aliens not admitted to the United States]. 8 U.S.C. § 1252(a)(5). "Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition-for-review] process*." J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis in original); *see id*. at 1035 ("§§ 1252(a)(5) and [(b)(9)] channel review of all claims, including policies-and-practices challenges . . . whenever they 'arise from' removal proceedings"); *accord Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009) (only when the action is "unrelated to any removal action or proceeding" is it within the district court's jurisdiction); *cf. Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 151 n.3 (2d Cir. 2006) (a "primary effect" of the REAL ID Act is to "limit all aliens to one bite of the apple" (internal quotation marks omitted)).

Critically, "[§] 1252(b)(9) is a judicial channeling provision, not a claim-barring one." *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007). Indeed, 8 U.S.C. § 1252(a)(2)(D) provides that "[n]othing . . . in any other provision of this chapter . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." *See also Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008) ("[J]urisdiction to review such claims is vested exclusively in the courts of appeals[.]"). The petition-for-review process before the court of appeals ensures that aliens have a proper forum for claims arising from their immigration proceedings and "receive their day in court." *J.E.F.M.*, 837 F.3d at 1031–32 (internal quotations omitted); *see also Rosario v. Holder*, 627 F.3d 58, 61 (2d Cir. 2010) ("The REAL ID Act of 2005 amended the [INA] to obviate . . .

8

Suspension Clause concerns" by permitting judicial review of "nondiscretionary" BIA determinations and "all constitutional claims or questions of law.").

In evaluating the reach of subsections (a)(5) and (b)(9), the Second Circuit explained that jurisdiction turns on the substance of the relief sought. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). Those provisions divest district courts of jurisdiction to review both direct and indirect challenges to removal orders, including decisions to detain for purposes of removal or for proceedings. *See Jennings*, 583 U.S. at 294–95. Here, Petitioner challenges the decision and action to detain her for purposes of removal and is thus an "action taken . . . to remove [him/her] from the United States." *See* 8 U.S.C. § 1252(b)(9); *see also, e.g.*, *Jennings*, 583 U.S. at 294–95. The reasoning in *Jennings* outlines why the Petitioner's claims cannot be reviewed by the Court.

In summary, Congress divested this Court of jurisdiction to prevent the execution of removal orders, meaning it should dismiss the Petition for lack of jurisdiction.

**C. Petitioner's Claims Fail on the Merits because the Revocation of Petitioner's OSUP Comports with Applicable Regulations and the Constitution.**

If this Court finds that it has jurisdiction and it does not deny Petition as premature, it should nonetheless deny the Petition on the merits.

**1. The Revocation of Petitioner's OSUP Comports with Applicable Regulations.**

Should the Court find, as other courts in this District have, that it has jurisdiction to review the revocation of Petitioner's OSUP, it should still find that the revocation was lawful and in compliance with the applicable regulations.

Petitioner claims that his OSUP was revoked despite no violations, and he was given no explanation for his detention. *See* Petition, at 3-4. Petitioner overlooks, however, that violation of an OSUP's conditions is not the only basis upon which an OSUP may be revoked. Notably, DHS has the discretionary authority to revoke an OSUP if "(i) the purposes of release have been served,

(ii) the alien violates a condition of release, (iii) *it is appropriate to enforce a removal order or to commence removal proceedings against an alien*, or (iv) the conduct of the alien, or any other circumstance indicates that release is no longer appropriate. 8 C.F.R. § 241.4(l)(2) (emphasis added). ICE did not revoke Petitioner's OSUP here for a violation of its conditions, but in order to enforce the removal order pending against him. *See* Exhibit C; Exhibit F.

While 8 C.F.R. § 241.4(l)(1) permits revocation for release when an alien violates the conditions of release,  section 241.4(l)(2), in contrast, gives DHS the discretionary authority to revoke an OSUP not only for an alien's violation of the conditions of the OSUP, but also when (i) the purposes of release have been served, (ii) the alien violates a condition of release, (iii) *it is appropriate to enforce a removal order or to commence removal proceedings against an alien*, or (iv) the conduct of the alien, or any other circumstance indicates that release is no longer appropriate. 8 C.F.R. § 241.4(l)(2) (emphasis added). Additionally, ICE is not required to "conduct a custody review under these procedures when [ICE] notifies the alien that it is ready to execute an order of removal," as ICE did here when it issued Petitioner on March 4, 2026, and May 4, 2026, a Notices of Removal to Mexico. 8 C.F.R. § 241.4(g)(4); *Rodriguez-Guardado*, 271 F. Supp. 3d at 335; *see also* Exhibit I; Exhibit E. Furthermore, if ICE determines in its "judgment [that] travel documents can be obtained, or such document is forthcoming, the alien will not be released unless immediate removal is not practicable or in the public interest." 8 C.F.R. § 241.4(g)(3).

When ICE "determine[s] that revocation [is] necessary to initiate [] removal … [n]o further justification [is] required." *Doe v. Smith*, No. 18-cv-11363-FDS, 2018 WL 4696748, at *11 (D. Mass. Oct. 1, 2018). The regulation does not require an official to make "a formal determination that [] revocation [is] in the public interest[;]" instead, ICE has "discretion to determine when revocation is appropriate." Id. The regulation provides a "short and straight path for immigrants

10

whom the government is ready and able to remove." *Alam v. Nielsen*, 312 F. Supp. 3d 574, 582 (S.D. Tex. 2018). As such, ICE has ample discretion and justification per its regulation to revoke release. *See Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *5 (S.D. Fla. Sept. 9, 2025) (holding that § 241.4(l) provides government has "extraordinarily broad discretion to revoke an OSUP" under similar circumstances); *Barrios*, 2025 WL 2280485, at *4 (noting the broad discretion afforded to revoke an OSUP when effectuating an order of removal and that such a decision is not subject to judicial review under §1252(g)).

Courts routinely conclude that compliance with these post-removal-custody regulations protect an individual's constitutional rights while detained pending removal. *See*, e.g., *Moses v. Lynch*, No. 15-cv-4168, 2016 WL 2636352, at *4 (D. Minn. Apr. 12, 2016) ("When immigration officials reach continued-custody decisions for aliens who have been ordered removed according to the custody-review procedures established in the Code of Federal Regulations, such aliens receive the process that is constitutionally required."); *Portillo v. Decker*, No. 21-cv-9506 (PAE), 2022 WL 826941, at *6 (S.D.N.Y. Mar. 18, 2022) (collecting cases supporting the conclusion that the POCR framework has routinely been deemed constitutional and noting that petitioner had not "cite[d] legal authority in support of his generalized laments about the administrative process").

Because Petitioner cannot establish that ICE acted arbitrarily in revoking his OSUP, his argument fails, and this Court should deny his Petition. *See*, e.g., *Perez v. Berg*, No. 24-cv-3251 (PAM/SGE), 2025 WL 566884, at *7 (D. Minn. Jan. 6, 2025), report and recommendation adopted, No. 24-cv-3251 (PAM/ECW), 2025 WL 566321 (D. Minn. Feb. 20, 2025) (finding no due process violation "[a]bsent an indication that ICE failed to comply with its regulatory obligations in some more specific way"); Doe, 2018 WL 4696748, at *7 (dismissing habeas claim where "there was no regulatory violation" in connection with custody reviews).

Notwithstanding the foregoing, Respondents did, in fact, provide Petitioner with an informal interview regarding the reason for the revocation, and to afford Petitioner an opportunity to respond to the reasons of his OSUP revocation as stated in the revocation letter. *See* Exhibit C; Exhibit F. As such, Respondents complied with the requirements for revocation of release under 8 C.F.R. § 241.4(l) – even though they were not required to do so. *Compare* 8 C.F.R. § 241.4(l)(1) *and* § 241.4(l)(2).

And even if the requirement of an interview did apply and Respondents had not complied, Petitioner's claims could be readily resolved, meaning the alleged violation does not rise to a level of a constitutional claim. *See*, e.g., *Van v. Oddo*, 2025 WL 3492736 at *4 (finding no violation). For these reasons, Petitioner's reliance on an alleged violation of 8 C.F.R. § 241.4(l) does not relate to her "commitment or detention" and do not rise to a Constitutional or statutory violation warranting habeas relief. *Id*. Accordingly, to the extent that Petitioner is challenging the revocation of his supervised release pursuant to the OSUP, the Court should deny the Petition.

## CONCLUSION

For the foregoing reasons, Respondent respectfully submit that Petition should be dismissed or denied.

Respectfully submitted,

**JASON A. REDING QUIÑONES**
**UNITED STATES ATTORNEY**

By: s/ *Brittany Brock*
Brittany Brock
Special Assistant U.S. Attorney
Special Bar ID No.: A5503456
E-Mail: Brittany.Brock@usdoj.gov
United States Attorney's Office
99 NE 4th Street, Suite 300
Miami, Florida 33132
Telephone: (305) 961-9108

12

*Counsel for Respondent*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 7, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List via CM/ECF.

By: *<u>s/ Brittany Brock</u>*
Brittany Brock
Special Assistant U.S. Attorney